## HALLEMAN *vs.* HALLEMAN.

1. Whether the verdict was contrary to the charge of the court or not, cannot be considered when the charge is not set forth either in the record or bill of exceptions.

2. The act of October 28, 1870, entitled "an act to extend the provision for alimony to the family of the husband, to provide for the custody of the children, and for other purposes connected therewith," is not unconstitutional as referring to more than one subject matter, or as containing matter different from what is expressed in its title. An examination of the act will show that alimony, custody of children, etc., was the only subject matter referred to therein.

3. There is no law which confines a jury in the allowance of alimony to the property owned by the husband at the date of the verdict. The verdict may cover any property mentioned in the schedule.

4. That the verdict allowing alimony to the wife made no provision for the payment of the debts of the husband, does not render it illegal. Possibly the indebtedness of the husband might show the allowance to have been excessive, but the amount of such indebtedness does not anywhere appear. The decree will not be good as against the debts created prior to the filing of the schedule.

5. Under the peculiar facts of this case, the admission of the copy note from Miss Bullard to the defendant was not error. He was shown to have been in possession of one note from her, and in response to the notice to produce he should have shown clearly that it was not the one called for, and also how it came to be written over in pencil and blurred, so as to be unintelligible.

6. Without such note, the network of circumstances surrounding defendant shows his relations to Miss Bullard to have been very suspicious whether he actually cohabited with her or not. His conduct, the amount of property brought by the wife into the coverture, her blameless life and reputation, all justify the verdict.

Alimony. Practice in the Supreme Court. Constitutional law. Evidence. Production of papers. New trial. Before Judge SIMMONS. Houston Superior Court. April Term, 1880.

Reported in the opinion.

DUNCAN & MILLER, for plaintiff in error.

A. S. GILES; HALL & SON; DAVIS & RILEY, for defendant.

HAWKINS, Justice.

C. M. Halleman, wife of defendant, on the twelfth day of June, 1879, filed her bill in equity for permanent alimony, in Houston superior court. She alleged that she was married to defendant in 1844. He was a widower and she a young girl. By the marriage two children were born and reared, and all now live apart from herself and husband. At the time of her marriage she owned a large estate, and the land whereon they lived at the separation was brought into the coverture by her.

She sets forth a schedule of $8,000.00, including this land, of the value of $4,500.00; she alleges that on the eighth day of April, 1879, on account of his adulterous habits and cruel conduct, she was compelled to leave him, and she is now living in a voluntary and *bona fide* state of separation, and prays for permanent alimony.

The defendant answered the bill, denying the adulterous and cruel conduct, and on the issue before a jury in Houston superior court, a great amount of evidence was submitted on the question of adultery and cruelty, and as to the amount and value of the property; also, as to the amount brought into the coverture by the intermarriage. The jury, under the charge of the court, decreed that the land and stock thereon should be equally divided between the husband and wife—she to have the use of one moiety for life or during separation. Commissioners were appointed in and by the decree to make division in kind, if practicable, otherwise to report to the court.

A motion was made by the husband for a new trial upon several grounds:

1. The verdict of the jury was contrary to the charge of the court, which correctly submitted the law controlling the case.

2. Because the act of the general assembly, approved October 28th, 1870, as embodied in the Code of Georgia, section 1747, under which complainant's proceeding is brought, is unconstitutional, null and void, being in violation of paragraph 5, of section 4, of article 3, of the constitution of Georgia in force at that time.

3. Because the verdict of the jury gives to complainant one-half of certain specific property alleged to have been owned by movant at the date of separation, whereas she was only entitled to recover (if at all) a portion of the specific property alleged to be owned by movant at the date of the verdict.

4. Because the verdict of the jury makes no provision for the payment of the debts existing at the separation.

5, 6, 7. Because the verdict is excessive, contrary to evidence, and contrary to law.

8. Because the court erred in admitting in evidence the ,copy note from Angeline Bullard to the husband, the existence of a genuine original thereof not having been first shown as required by law.

Several questions were made on the decree, which will be disposed of in the decision of the other points.

1. As to the first ground, that the jury found contrary to the charge of the court, after a thorough search through the entire record, we have not been able to find the charge of the court, and therefore cannot say whether the jury rendered the decree contrary to the charge of the court or in accordance therewith.

2. The second ground, and the one relied on in the argument here, is that the act of the general assembly of the twenty-eighth day of October, 1870, is unconstitutional, null and void, and therefore the equitable proceeding had in this case could not be maintained.

It is insisted here that the said act of 1870 is obnoxious to that provision of the constitution of 1868 contained in sec. 5056 of the new Code, which says, " nor shall any law or ordinance pass which refers to more than one subject

matter, or contains matter different from what is expressed in the title thereof."

The title of the act of 1870 is in these words: "An act to extend the provisions for alimony to the family of the husband, to provide for .the custody of the children, and for other purposes connected therewith." The subject matter was alimony—the purpose was to extend the provision for it, to provide for the custody of the children, and for other purposes connected therewith.

By the law as it stood in Georgia at the time the act was passed, there was no express provision for the support and custody of the children except on the applica- and pendency of a libel for divorce. See Code, sec. 1736 *et seq*. The wife, however, could obtain permanent alimony in three cases, first, of divorce as considered in the former section; second, in case of voluntary separation; third, where the wife against her will is either abandoned or driven off by her husband.

By the act of 1870, provision is made for a more speedy adjudication of her right to permanent alimony, and also for the custody and support of the children.

The evils in the old law were, that the wife living in a state of voluntary separation, abandoned by her husband, or driven from home, was compelled to await the tardy progress of a regular chancery proceeding for her permanent alimony, and if the custody of the children (perhaps her own helpless infants), was involved, be driven to a process by the writ of *habeas corpus* to have those rights settled, and to forego all alimony for the children until a formal decree could be rendered on a divorce suit.

· The remedy was to extend these provisions as to alimony to the family, including the right of the wife as before, with a more speedy remedy for its enforcement, and in the same way adjudge the custody of the children and their support. See section 1747. In that view, whether a divorce is pending or not, by the provisions of the act of 1870, the family of the husband, wife and children, or

either, can have permanent alimony granted by a proper decree, and at the same time the right to the custody and companionship of the children be settled. The object of the act of 1870 was not to deal with two or more subjects, but to extend the legislation as to one-subject matter, to-wit : alimony. Alimony was the subject and it was competent to provide all necessary laws in relation to the subject matter. It can hardly be said that any other subject matter than alimony, custody of the children, etc., was contemplated by the legislature.

The right of the wife to permanent alimony in the cases given was complete before the act of 1870, but the remedy was inefficacious in supplying the wife with support and maintenance in this terrible exigency, produced by the abandonment of, or cruelty of, the husband, or where a voluntary state of separation existed in good faith.

We think the act of 1870 is constitutional. On that account we think the court committed no error in so holding.

If there is a divorce begun, then the decree will remain in abeyance until a final decree can be had on the suit, and the only difference between the decree obtained in this case, and what the wife could have had before, was in the time of its trial and not the manner thereof, and in this case there were no minor children.

3. The third ground is that the verdict of the jury gave complainant one-half of specific property owned at the separation, when it should have been a portion owned at the verdict. We know of no rule of law that confines the jury in the allowance of alimony to do so out of the property owned at the date of the verdict. The decree may be for money—bank stock, choses in action or other property mentioned in the schedule—the purpose of the law is to afford the wife (in cases where her rights are established) protection, support and competence according to the wealth of the husband—the amount she may

Halleman *vs.* Halleman.

have brought into the coverture, and the wrong she has sustained by her husband's conduct.

4. As to the ground that the verdict of the jury made no provision for payment of debts, we cannot see how that can be illegal, unless it is to show the amount excessive; whether he was indebted much, and how, does not appear; besides, this decree will not be good against the debts created before—and if the husband should be compelled, out of his part to pay debts—his equity for contribution, perhaps, would exist, but for all that appears, the jury did consider that question and decreed accordingly.

There is therefore no error on that point.

5. Did the court commit error in admitting the note in evidence—the original of which Mrs. Halleman alleged she got from the pocket of her husband, from Angeline Bullard—because there was not sufficient evidence of a genuine original?

The evidence on that point was that complainant served defendant with notice to produce the original of a copy letter from Miss Bullard to the husband. He responded that he had no such letter. Defendant's son testified that after the separation his mother showed him the copy of the note from Angeline Bullard to the defendant, and he called his father's attention to it, and showed him the copy, when his father took from his pocket a note which he said was the one, the memoranda of articles she wanted him (defendant) to get, exactly corresponding with the copy, but the rest of the note was obliterated by pencil marks so as not to be read.

There was no explanation submitted as to how or by whom the obliteration was made, the husband and wife both being incompetent to testify. The court permitted the copy note to go in evidence.

On the examination of defendant to the notice to produce the note, it was competent to explain the blurring of the note, and if he knew, to give its contents. Under

the circumstances, we think the court committed no error in submitting the evidence and the note to the jury, who would judge of the whole matter.

6. Besides, in this case the circumstances as detailed, (without the note) and putting them in the best light for the defendant, exhibit a state of things rather suspicious, and whether he had actual cohabitation with her or not, his persistent refusal to remove her and her two sisters from his place, and when this suit was brought, renting a house for them in Macon, and his visitations thereto at unusual hours, together with her proved general character for lewdness, surrounded him with a net-work of unfortunate evidence from which a jury of his county might infer guilt; much more, might a watchful wife whose peace was in her husband's fidelity, and who was compelled to hear and witness these surroundings and feel assured of his impropriety with Angeline Bullard, to say nothing of his actual guilt. We do not think the verdict excessive.

It appeared that he had other property besides this, that his children were all provided for, and the one-half of this property would not yield more than four or five hundred dollars at the highest; that she is near sixty years old, blameless in her reputation, and raised the child of competency.

We, therefore, affirm the judgment of the court.